```
        IN THE UNITED STATES DISTRICT COURT FOR THE
               SOUTHERN DISTRICT OF ALABAMA
                     SOUTHERN DIVISION
```

TERRANCE MOSLEY,                    :

        Plaintiff,                  :

                                    :
vs.                                       CIVIL ACTION 07-692-KD-M
                                    :
WATSON BISHOP,
                                    :
        Defendant.


                    REPORT AND RECOMMENDATION

        Plaintiff, an Alabama prison inmate proceeding pro se and in
forma pauperis filed a Complaint under 42 U.S.C. § 1983.  This
action was referred to the undersigned pursuant to 28 U.S.C. §
636(b)(1)(B) and Local Rule 72.2(c)(4), and is now before the
undersigned on the Motion for Summary Judgment of Defendant,
Captain Watson Bishop.  (Docs. 16, 17, 29) and Plaintiff's
Oppositions thereto.  (Docs. 19, 24, 25, 26).  After
consideration of these pleadings, and for the reasons set forth
below, it is recommended that the Motion for Summary Judgment of
Defendant be granted and that Plaintiff's action against the
Defendant be dismissed with prejudice.  In addition, having found
herein that Plaintiff's allegations do not establish a
constitutional violation, Plaintiff's Motion for Interrogatories
(Doc. 27), and Plaintiff's Motion for Disclosure and Production
of Documents (Doc. 28) are both due to be denied as moot.

I. FACTS AND PROCEEDINGS

From its review of the record, the Court summarizes the parties' allegations which are material to the issues addressed in this Report and Recommendation.  On September 10, 2007, at approximately 4:20 a.m., while incarcerated in the segregation unit at Holman Correctional Facility ("Holman"), Plaintiff threw a mixture of urine and feces on Correctional Officer Penton Ashworth, who was attempting to force Plaintiff to remove his arm from his tray hole door.  (Doc. 17 at 5-6, 8).  Plaintiff was subsequently charged with "assault with (sic) a person associated with the ALDOC," and after pleading guilty on September 28, 2007, received 45 days of disciplinary segregation, as well as 45 days of loss of all privileges.  (Id. at 12-13).

More immediately, however, following the throwing of the waste mixture on the correctional officer, Plaintiff was removed from his cell and escorted by a number of correctional officers to see Captain Bishop.  (Id. at 6).  Apparently upon entering the office where Defendant Bishop was waiting for Plaintiff, a small altercation occurred between Plaintiff and Defendant Bishop, ending with Defendant Bishop ordering the officers to escort Plaintiff to the health unit for an examination prior to being returned to segregation.[1]  (Id.).  After Plaintiff returned to

---

[1]Plaintiff's medical examination reflected that he was in good condition and that he denied any injuries.  (Doc. 17, Ex. 1 at 11).  The medical report reflected that Plaintiff had one

2

segregation, he was stripped of his clothes, except for boxer shorts and t-shirt, and placed in a "stripped" cell.  (<u>Id.</u>).

Plaintiff complains that he was forced to live in this condition for a period of nine days, beginning on September 10, 2007, and ending on September 19, 2007.[2]  (Doc. 1 at 8). Plaintiff claims specifically that his mattress, bed linens, clothing, toothbrush, and toothpaste were all taken from him, and he was forced to sleep on a "cold, raw steel slab."  (<u>Id.</u>). Plaintiff alleges that during this time period he was not allowed to receive his "constitutionally protected right to exercise for at least 45 minutes each day."  (<u>Id.</u>).  Plaintiff further contends that he is a mentally ill prisoner, and that Defendant should have notified the mental health staff before taking any "punitive disciplinary action" against him.  (<u>Id.</u> at 9).

On October 1, 2007, Plaintiff filed the present § 1983 action asserting Eighth and Fourteenth Amendment claims against

---

small laceration to his right wrist with no bleeding, and one small superficial laceration to the right side of his face. (<u>Id.</u>).  Plaintiff was released approximately five minutes after arriving, in satisfactory condition.  (<u>Id.</u>).

[2]Plaintiff also claims that he was forced to live in an identical "stripped" cell condition from August 4, 2007, until August 9, 2007.  (Doc. 1 at 8).  Defendant has no recollection of this event.  However, this is not an issue as Plaintiff's claims in either incident fall short of a constitutional violation. Therefore, even if he did live under those conditions in August as he alleges, this incident, just as the one alleged in September, fails to show a violation of Plaintiff's constitutional rights.

Defendant Bishop for forcing him to live in a "stripped" cell for a five day and later a nine day period of time and denying him his daily 45 minute exercise period during each of those periods of time.[3]  (Doc. 1).  Plaintiff seeks compensatory and punitive damages, as well as injunctive relief.[4]  (Id. at 8).

In his Answer and Special Report filed on February 2, 2009, Defendant denies that he violated Plaintiff's constitutional rights and asserts the defenses of absolute, qualified, and state discretionary immunity.[5]  (Docs. 16, 17, 29).  On February 26,

---

[3] Plaintiff also seeks damages under the Americans with Disabilities Act, the Anti-Torture Act, and for the violation of human rights.  Plaintiff's allegations are civil rights claims, however, falling if anywhere, within the Eighth and Fourteenth Amendments to the Constitution, and not within the Americans with Disabilities Act, nor within any "torture" act.  Accordingly, the Court will address each of Plaintiff's allegations under the Eighth and Fourteenth Amendments to the Constitution.

[4] Plaintiff notified the Court on February 19, 2008, that he had been transferred to St. Clair Correctional Facility.  (Doc. 4).  On September 8, 2008, he notified the Court of his transfer back to Holman.  (Doc. 6).  Then, on October 14, 2008, Plaintiff notified the Court that he had again been transferred to St. Clair Correctional Facility.  (Doc. 7).  On February 19, 2009, Plaintiff notified the Court that he had been transferred to Donaldson Correctional Facility.  (Doc. 20).  "'[A]n inmate's request for injunctive and declaratory relief in a section 1983 action fails to present a case or controversy once an inmate has been transferred.'"  Harrison v. Culliver, 2008 WL 2788352, *3 (S.D. Ala. 2008) (citations omitted).  Therefore, Plaintiff's claims for injunctive relief related to his incarceration at Holman prison are moot.

[5] In his Complaint, Plaintiff states that he is suing Defendant in his official and individual capacity.  As a state official, Defendant is entitled to absolute immunity from suit for damages in his official capacity.  See Harbert Int'l, Inc. v. James, 157 F.3d 1271, 1277 (11th Cir. 1998) (state officials sued

4

2009, the Court entered an Order converting Defendant's Special

Report and Answer to a Motion for Summary Judgment.  (Doc. 23).

On February 19, 2009, and on March 26, 2009, Plaintiff filed

responses in opposition to Defendant's Motion for Summary

Judgment, reasserting his claims against Defendant.[6]  (Docs. 19,

24).  Additionally, Plaintiff filed two affidavits in support of

the claims raised in this action.  (Docs. 25, 26).  On April 24,

2009, Defendant filed a Corrected and Supplemental Affidavit.

(Doc. 29).  Defendant's motion and Plaintiff's responses thereto

---

in their official capacities are protected from suit for damages
under the Eleventh Amendment).  Furthermore, "[q]ualified
immunity protects government officials performing discretionary
functions from suits in their individual capacities unless their
conduct violates 'clearly established statutory or constitutional
rights of which a reasonable person would have known.'"
Dalrymple v. Reno, 334 F.3d 991, 994 (11th Cir. 2003) (quoting
Hope v. Pelzer, 536 U.S. 730, 739 (2002)).  In determining
whether qualified immunity is appropriate in a given case, "[t]he
court must first ask the threshold question whether the facts
alleged, taken in the light most favorable to the plaintiffs,
show that the government official's conduct violated a
constitutional right."  Dalrymple, 334 F.3d at 995 (citing
Saucier v. Katz, 533 U.S. 194, 201 (2001)).  Having found herein
that Plaintiff's allegations do not establish a constitutional
violation, "there is no necessity for further inquiries
concerning qualified immunity."  Saucier, 533 U.S. at 201.

    [6]In his opposition, Plaintiff also makes new allegations
such as being denied toilet paper, soap, and showers during his
confinement in the stripped cell.  (Docs. 19, 24, 25, and 26).
To the extent Plaintiff's responses are an attempt to amend his
Complaint, those allegations are rejected and any motion to amend
the complaint is hereby denied.  This action is before the Court
on Defendant's Motion for Summary Judgment.  Plaintiff was aware
when he filed this action months ago whether or not he was
deprived of toilet tissue, soap, and showers during his
confinement in the stripped cell in 2007.

are now before the Court.

## II. SUMMARY JUDGMENT STANDARD

In analyzing the propriety of a motion for summary judgment, the Court begins with these basic principles.  The Federal Rules of Civil Procedure grant this Court authority under Rule 56 to render "judgment as a matter of law" to a party who moves for summary judgment.  "[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact. . . .'" Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)).

All of the evidence and factual inferences reasonably drawn from the evidence must be viewed in the light most favorable to the nonmoving party.  Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Jackson v. BellSouth Telecomms., 372 F.3d 1250, 1280 (11th Cir. 2004).  However, Rule 56(e) states that:

> an adverse party [to a motion for summary judgment] may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e); see also Celotex Corp., 477 U.S. at 325-27.

6

"[T]here is no issue for trial unless there is sufficient
evidence favoring the nonmoving party for a jury to return a
verdict for that party. . . .  If the evidence is merely
colorable, . . . or is not significantly probative, . . . summary
judgment may be granted." <u>Anderson v. Liberty Lobby, Inc.</u>, 477
U.S. 242, 249-50 (1986) (internal citations omitted).  "Summary
judgment is mandated where a party 'fails to make a showing
sufficient to establish the existence of an element essential to
that party's case, and on which that party will bear the burden
of proof at trial.'" <u>Custom Mfg. & Eng'g, Inc. v. Midway Servs.,
Inc.</u>, 508 F.3d 641, 647 (11th Cir. 2007) (citations omitted).

### III. DISCUSSION

As discussed above, Plaintiff seeks redress pursuant to 42
U.S.C. § 1983 for alleged constitutional deprivations arising out
of his temporary imprisonment in a "stripped" cell while he was
incarcerated at Holman prison.  (Doc. 1).  Specifically,
Plaintiff alleges that Defendant violated his Eighth Amendment
rights by: (1) forcing him to live in a cell without a mattress,
bed linens, toothpaste, a toothbrush, or clothing for a period of
nine days; and (2) failing to allow him his right to 45 minutes
of daily exercise during the nine day period of time.  (<u>Id.</u> at
4, 8).  Plaintiff further claims that Defendant violated his
Fourteenth Amendment right to due process by confining him in the
stripped cell and improperly depriving Plaintiff of his mattress.

7

(Id. at 9).  It also appears that Plaintiff is asserting that a constitutional violation occurred because Defendant allegedly failed to consult with mental health services prior to punishing Plaintiff by confining him in the stripped cell.  (Id. at 9).

Section 1983 provides in pertinent part that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

42 U.S.C. § 1983 (1994).  The Court will address each of Plaintiff's claims in turn.

 A. Eighth Amendment Claim.

The Eighth Amendment provides that, "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. Amend. VIII.  The Eighth Amendment's proscription against cruel and unusual punishment prohibits prison officials from exhibiting "'deliberate indifference to a substantial risk of serious harm to an inmate." Farmer v. Brennan, 511 U.S. 825, 828 (1994).

"[T]he Constitution does not mandate comfortable prisons." Rhodes v. Chapman, 452 U.S. 337, 349 (1981).  All that is required under the Eighth Amendment is that prison officials

8

"ensure that inmates receive adequate food, clothing, shelter, and medical care, and . . . 'take reasonable measures to guarantee the safety of the inmates[.]'" Farmer v. Brennan, 511 U.S. 825, 832 (1994) (citations omitted); see also Hamm v. DeKalb County, 774 F.2d 1567, 1572 (11th Cir. 1985) (finding that the Eighth Amendment requires that a prisoner receive "reasonably adequate food, clothing, shelter, and sanitation."). Prison conditions constitute cruel and unusual punishment when they result in the "unquestioned and serious deprivation of basic human needs." Rhodes, 452 U.S. at 346.

In order to prevail on an Eighth Amendment claim alleging inhumane conditions of confinement, an inmate must make both an objective and a subjective showing. Farmer, 511 U.S. at 834-35. The objective component requires the Court to look to "contemporary standards of decency" to determine whether the challenged conditions resulted in a deprivation of "the minimal civilized measure of life's necessities" or "basic human needs." Rhodes, 452 U.S. at 347.

"[E]xtreme deprivations are required to make out a conditions-of-confinement claim," "[b]ecause routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society[.]'" Hudson v. McMillian, 503 U.S. 1, 9 (1992) (citations omitted). "Nothing so amorphous as 'overall conditions' can rise to the level of cruel and unusual punishment

when no specific deprivation of a single human need exists."
Wilson v. Seiter, 501 U.S. 294, 305 (1991).

The objective component of an Eighth Amendment claim
inquires whether the alleged wrongdoing amounted to the
infliction of "unnecessary pain or suffering upon the prisoner."
LaMarca, 995 F.2d at 1535.  This standard requires that the
alleged deprivation be "objectively, 'sufficiently serious.'"
Farmer, 511 U.S. at 834 (quoting Wilson v. Seiter, 501 U.S. 294,
298 (1991)).  The objective standard "embodies broad and
idealistic concepts of dignity, civilized standards, humanity,
and decency. . ., but must be balanced against competing
penological goals."  LaMarca, 995 F.2d at 1535 (quoting Estelle
v. Gamble, 429 U.S. 97, 102 (1976) (internal quotation marks
omitted)).

The subjective component requires that the prison official
have been "deliberate[ly] indifferen[t]" to a substantial risk of
serious harm.  Farmer, 511 U.S. at 828-29.  "[A] prison official
cannot be found liable under the Eighth Amendment for denying an
inmate humane conditions of confinement unless the official knows
of and disregards an excessive risk to inmate health or safety;
the official must both be aware of facts from which the inference
could be drawn that a substantial risk of serious harm exists,
and he must also draw the inference."  Id. at 837.

The subjective component of an Eighth Amendment claim

10

generally "inquires whether the officials acted with a
sufficiently culpable state of mind." Sims, 25 F.3d at 983-84
(citing Hudson v. McMillian, 503 U.S. 1, 8 (1992)). This
component "follows from the principle that 'only the unnecessary
and wanton infliction of pain implicates the Eighth Amendment.'"
Farmer, 511 U.S. at 834 (quoting Wilson, 501 U.S. at 297).
Moreover, "[a] plaintiff must also show that the constitutional
violation caused his injuries." Marsh v. Butler County, Ala.,
268 F.3d 1014, 1028 (11th Cir. 2001).

A prison official's duty under the Eighth Amendment is to
ensure "reasonable safety," a standard that incorporates due
regard for prison officials' "unenviable task of keeping
dangerous men in safe custody under humane conditions." Farmer,
511 U.S. at 844-45 (citations omitted). "Whether one puts it in
terms of duty or deliberate indifference, prison officials who
act reasonably cannot be found liable under the Cruel and Unusual
Punishments Clause." Id. Moreover, "[w]hen the conduct in
question," such as placement in a strip cell, "involves any
measure taken to prevent a security threat or restore official
control, the Eighth Amendment inquiry is whether force was
applied in a good faith effort to maintain or restore discipline
or inflicted maliciously and sadistically for the very purpose of
causing harm." Sims v. Mashburn, 25 F.3d 980, 984 (11th Cir.
1994). Prison officials "should be accorded wide-ranging

11

deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." Bell v. Wolfish, 441 U.S. 520, 547 (1979).

Plaintiff alleges that, on September 10, 2007, his mattress, bed linens, clothing, toothpaste, and toothbrush were removed from his cell, leaving him to sleep on a "cold, raw steel slab."[7]

---

[7]Plaintiff has subsequently alleged in his Opposition to Defendant's Motion for Summary Judgment that during his confinement in the stripped cell, he was also deprived of toilet paper, soap, and showers. (Doc. 24 at 3). Plaintiff alleges that he was forced to clean himself with his bare hand after defecating. (Id. at 3-4). The Court is astounded that Plaintiff would have failed to alert the Court to such an incredible allegation in his Complaint, where he complained of being deprived of such items as toothpaste and a toothbrush. (Doc. 1). In response to Plaintiff's delayed allegation regarding toilet paper, Defendant has averred that Plaintiff, like other inmates in stripped cells, was "allowed to keep in his possession toilet tissue, soap, a toothbrush, shower slides, a face cloth and a towel." (Doc. 29, Attachment 1 at 2). Defendant further averred that an inmate in a stripped cell is allowed to shower with the other segregation inmates.

To the extent that Plaintiff is attempting to amend his Complaint, this request is denied, and the Court rejects Plaintiff's very delayed allegations including those of a lack of toilet paper, soap, and showers. Plaintiff was certainly aware of whether he had been denied these items and privileges at the time of filing his Complaint months ago. However, even if Plaintiff had properly asserted this claim, it is this Court's opinion that the temporary absence of toilet paper under the circumstances of this case, would not constitute cruel and unusual punishment. The evidence shows that on at least one occasion, Plaintiff has personally, and voluntarily, handled feces and urine for the purpose of throwing on an officer. Therefore, Plaintiff's allegations in his response to Defendant's Motion for Summary Judgment, which he failed to mention in his Complaint, are not only unbelievable but also do not, under the circumstances of this case, constitute cruel and unusual

(Doc. 1 at 8).  Plaintiff contends that this condition continued for a period of nine days, ending on September 19, 2007.  (Id.).  Plaintiff further alleges that during this time period he was not allowed to receive his "constitutionally protected right to exercise for at least 45 minutes each day."  (Id.).  While Plaintiff alleges no injury from his confinement, he does seek damages.[8]   (Id. at 11).

In order to establish his Eighth Amendment inhumane conditions of confinement claim, Plaintiff must prove that temporarily having no clothes and toothpaste and sleeping on a "slab" with no mattress and no bedding resulted in a denial of the minimal civilized measure of life's necessities or subjected him to a wanton and unnecessary infliction of pain and that Defendant knowingly disregarded the excessive risk to his health or safety created by such a deprivation.  Farmer, 511 U.S. at 834, 837.

The Court begins with the principle that inmates have no absolute right to bedding or clothes under the Eighth Amendment. See Beard v. Strength, 2008 WL 2754094, *3 (S.D. Ga. 2008) (rejecting an inmate's claim that being forced to sleep directly

---

punishment.

    [8]In Plaintiff's response to Defendant's Motion for Summary Judgment, he claims that he has endured mental anguish.  (Doc. 19 at 10).  Notably, however, he did not assert this claim in his Complaint.  The issue is moot, however, as Plaintiff has failed to show a constitutional violation in this action.

on the floor during periods of overcrowding violated his Eighth
Amendment rights, holding: "[a]lthough Plaintiff may argue that
he had an absolute right to bedding, no such right exists.")
(citing <u>Williams v. Delo</u>, 49 F.3d 442, 446 (8th Cir. 1995)
("there is no absolute Eighth Amendment right not to be put in a
cell without clothes or bedding;" inmate's four-day confinement
in a strip cell did not violate the Eighth Amendment)).  Also,
requiring an inmate to sleep on the "bare cement floor" without a
mattress for five days during periods of overcrowding does not
amount to an Eighth Amendment violation.  <u>Fischer v. Ellegood</u>,
238 Fed. Appx. 428, 433 (11th Cir. 2007).

Being forced to temporarily sleep "upon a mattress on the
floor or on a table is not necessarily a constitutional
violation." <u>Hamm v. DeKalb County</u>, 774 F.2d 1567, 1575 (11th Cir.
1985).  "To determine whether conditions of confinement
constitute cruel and unusual punishment, the court must look to
the effect the condition has upon the inmate." <u>Wiley v. Glover</u>,
2008 WL 4629924, *18 (M.D. Ala. 2008) (citing <u>Rhodes</u>, 452 U.S. at
366).

In this action, although Plaintiff alleges that he was
forced to sleep on a "cold, raw steel slab," he does not allege
that any physical injury or pain resulted from this act.  In his
Complaint, Plaintiff claims no injury from his alleged living
conditions, including the alleged lack of exercise, over the nine

14

day period.  (Doc. 1).  Moreover, nothing in the record indicates that Plaintiff ever sought medical care as a result of any actions of Defendant as alleged in this action.  Further, Plaintiff only lived in this manner for a nine day period of time following the incident in which Plaintiff threw a mixture of feces and urine on a correctional officer, an incident that Plaintiff does not dispute.[9]

Under the circumstances alleged, Plaintiff's complaints, even if true, do not rise to the level of a deprivation of the minimal civilized measure of life's necessities or of a basic human need.  Cf. White v. Marshall, 2008 WL 4826283, *3, *8-9 (M.D. Ala. 2008) (holding that the plaintiff's confinement for thirty days in a strip cell with only a drain in the floor for urinating, cold sandwiches three times a day, no clothing except

---

[9]The act of throwing feces and urine is considered a safety and a health threat, and according to Defendant, it is prison policy to "strip" a cell in an attempt to protect officers and other inmates from an inmate who has shown the propensity to do such an act.  (Doc. 17, Ex. 1).  When all property is removed from an inmate's cell, the inmate has nothing with which to store liquid for another attack.  (Id.).  Prison policy allows an inmate to keep in his possession toilet tissue, soap, a toothbrush, shower slides, a face cloth, and a towel.  (Doc. 29, Attachment 1 at 2).  The property is slowly returned to the inmate over the next several days as the inmate demonstrates his willingness to cooperate.  (Id.).  The inmate in the stripped cell is allowed to shower, exercise and be fed at the same time as the other segregation inmates.  (Id. at 3).  The only apparent difference between the two is that the stripped cell inmate's property is initially taken and then slowly returned over a period of days while the inmate begins to cooperate with correctional officers.  (Id.).

15

for a paper gown, no mattress for twenty-four days, no blanket, no wash basin, no personal hygiene items, no lightbulb, no ventilation, and no shower or exercise for fourteen days were not deprivations of "the minimal civilized measures of life's necessities.").

Because Plaintiff has failed to allege circumstances that would establish a deprivation of "the minimal civilized measures of life's necessities," he has failed to meet the objective component of his Eighth Amendment claim.  Therefore, the Court need not address the subjective component.  Plaintiff has failed to state a constitutional violation based upon his allegations concerning his temporary confinement in the stripped cell.

B.   <u>Fourteenth Amendment Claim</u>.

Next, Plaintiff claims that Defendant violated his right to due process under the Fourteenth Amendment when Defendant removed Plaintiff's mattress from his cell and administered 14 days of punishment.[10]  Plaintiff also claims that his rights were violated

_____

[10]It appears to the Court that Plaintiff is claiming the days of punishment as the days of confinement in the stripped cell, and not the days of disciplinary segregation that Plaintiff actually received as a result of his admitted assault on a correctional officer with urine and feces.  (Doc. 17 at 12-13). Plaintiff has alleged that he was confined from August 4, 2007, until August 9, 2007, and then again from September 10, 2007, until September 19, 2007, for a total time period of 14 days. (Doc. 1 at 8).  Defendant has no record or recollection of the August confinement, however, this is not of issue as Plaintiff has failed to raise a constitutional claim related to his confinement in the stripped cell.

when Defendant allegedly failed to consult with mental health
services prior to confining him in the strip cell. (Doc. 1 at
9). The Court disagrees.

The Due Process Clause protects against deprivations of
"life, liberty, or property without due process of law." U.S.
Const. amend. XIV. Plaintiff appears to specifically contend
that he has been deprived of a property and liberty interest,
i.e., the removal of his mattress and the confinement in the
stripped cell. Regarding the extent of Plaintiff's liberty
interest within the meaning of the Fourteenth Amendment, the
Court notes the following:

> The Supreme Court has stated that there are
> two circumstances in which a prisoner can be
> deprived of a liberty interest beyond the
> deprivation associated with the prisoner's
> confinement. See Sandin v. Conner, 515 U.S.
> 472, 484, 115 S. Ct. 2293, 2300, 132 L. Ed.
> 2d 418 (1995). First, a liberty interest may
> arise from the "Due Process Clause of its own
> face," which extends procedural safeguards to
> a prisoner when his liberty is restrained in
> a way that exceeds the sentence imposed by
> the court. Id. Secondly, states may create
> liberty interests by conferring certain
> benefits to prisoners, the deprivation of
> which "impose[s] atypical and significant
> hardship on the inmate in relation to the
> ordinary incidents of prison life." Id.

Wallace v. Hamrick, 229 Fed. Appx. 827, 829-30 (11th Cir. 2007)
(unpublished)[11].

---

[11]"Pursuant to Eleventh Circuit Rule 36-2, unpublished
opinions are not considered binding precedent, but may be cited
as persuasive authority." Lanier Constr., Inc. v. Carbone Props.
of Mobile, LLC, 253 Fed. Appx. 861, 865, 2007 WL 3307384, *3

Plaintiff possesses a liberty interest related to his brief confinement in the stripped cell at Holman prison only if the State has created such a liberty interest. <u>Sandin</u>, 515 U.S. at 478. "'[T]he touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is not the language of the regulations regarding those conditions but the *nature of those conditions themselves 'in relation to the ordinary incidents of prison life.'*" <u>Wallace</u>, 229 Fed. Appx. at 830 (quoting <u>Wilkinson v. Austin</u>, 545 U.S. 209, 223 (2005), quoting <u>Sandin</u>, 515 U.S. at 484).

In <u>Sandin</u>, the Supreme Court compared the conditions of confinement in disciplinary segregation, administrative segregation, and the general population and found that a prisoner's thirty-day confinement in disciplinary segregation did not implicate a state-created liberty interest because it did not present an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." <u>Id.</u>, 515 U.S. at 484.

In the present case, Plaintiff has alleged that he was denied his mattress, bedding, clothing except for boxer shorts, toothpaste, a toothbrush, and daily exercise for a period of nine days. (Doc. 1). The Court notes that Plaintiff was already housed in disciplinary segregation at the time that his cell was

---

(11th Cir. 2007).

18

stripped because of his act of throwing feces and urine on a correctional officer.  As noted previously, the record reflects that the only difference between Plaintiff and any other inmate in disciplinary segregation was a temporary denial of his mattress, bedding, exterior clothing, toothpaste and toothbrush. (Doc. 29, Attachment 1 at 2).  Plaintiff has not alleged that he was denied adequate food or medical care, or sufficiently shown the denial of a basic human need, nor has he alleged any other circumstance that, in the Court's view, would constitute an atypical and significant hardship in relation to the ordinary incidents of prison life.  Therefore, Plaintiff did not possess a liberty interest in being free from the alleged conditions of his temporary stripped cell confinement.

Regarding Plaintiff's claim that he has been deprived a property interest in the loss of his mattress for nine days, the Court notes that "some level of significance is required in order for the actions of prison officials to implicate constitutional concerns.  *De minimis* events simply do not state constitutional claims." A'la v. Cobb, 2000 WL 303014, *2 (6th Cir. 2000) (unpublished) (citing Sandin v. Conner, 515 U.S. 472, 483 (1995) (holding that due process protections apply only to atypical and significant deprivations).  In this action, Plaintiff's allegation of denial of a mattress for a period of nine days hardly qualifies as a deprivation of constitutional magnitude. (Id.).

19

To the extent that Plaintiff is attempting to assert a due process claim regarding any lack of notification of mental health services prior to his "punishment" in the stripped cell, the evidence reflects that Plaintiff's placement in the stripped cell was for safety and security purposes and not for punishment. (Doc. 17, Ex. 1; Doc. 29, Attachment 1). Further, the records reflect that mental health services were notified prior to Plaintiff's disciplinary hearing regarding the charge against him for assaulting the correctional officer with the urine and feces. (Doc. 17, Ex. 1 at 14). Moreover, in any event, the possible failure to alert mental health services prior to meting out a punishment to Plaintiff simply fails to rise to a constitutional violation.

Because Plaintiff has failed to establish a deprivation of constitutional magnitude, his allegations do not rise to the level of a constitutional violation under the Due Process Clause of the Fourteenth Amendment. Accordingly, Defendant's Motion for Summary Judgment as to Plaintiff's Fourteenth Amendment claim is due to be granted.

## IV. CONCLUSION

Based on the foregoing, the Court concludes that Defendant Captain Watson Bishop is entitled to summary judgment in his favor on all claims asserted against him by Plaintiff. Accordingly, it is recommended that Defendant's Motion for

Summary Judgment be GRANTED, that this action be DISMISSED with

prejudice, and that judgment be entered in favor of Defendant and

against Plaintiff on all claims.

MAGISTRATE JUDGE' S EXPLANATION OF PROCEDURAL RIGHTS
AND RESPONSIBILITIES FOLLOWING RECOMMENDATION
AND FINDINGS CONCERNING NEED FOR TRANSCRIPT

1.  Objection.  Any party who objects to this recommendation or
anything in it must, within ten days of the date of service of
this document, file specific written objections with the clerk of
court.  Failure to do so will bar a *de novo* determination by the
district judge of anything in the recommendation and will bar an
attack, on appeal, of the factual findings of the magistrate
judge.  *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d
736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404
(5th Cir. Unit B, 1982)(*en banc*).  The procedure for challenging
the findings and recommendations of the magistrate judge is set
out in more detail in SD ALA LR 72.4 (June 1, 1997), which
provides that:

> A party may object to a recommendation entered by a
> magistrate judge in a dispositive matter, that is, a matter
> excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement
> of Objection to Magistrate Judge's Recommendation" within
> ten days after being served with a copy of the
> recommendation, unless a different time is established by
> order.  The statement of objection shall specify those
> portions of the recommendation to which objection is made
> and the basis for the objection.  The objecting party shall
> submit to the district judge, at the time of filing the
> objection, a brief setting forth the party's arguments that
> the magistrate judge's recommendation should be reviewed *de
> novo* and a different disposition made.  It is insufficient
> to submit only a copy of the original brief submitted to the
> magistrate judge, although a copy of the original brief may
> be submitted or referred to and incorporated into the brief
> in support of the objection.  Failure to submit a brief in
> support of the objection may be deemed an abandonment of the
> objection.

A magistrate judge's recommendation cannot be appealed to a
Court of Appeals; only the district judge's order or judgment can
be appealed.

2.  Transcript (applicable where proceedings tape recorded).
Pursuant to 28 U.S.C. § 1915 and Fed. R. Civ. P. 72(b), the

magistrate judge finds that the tapes and original records in this action are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

DONE this 7th day of May, 2009.

s/BERT W. MILLING, JR.
UNITED STATES MAGISTRATE JUDGE